GREENWALD BROS., Inc., v. LA VOGUE PETTICOAT CO., Inc.

(Circuit Court of Appeals, Second Circuit. June 22, 1915.)

No. 203.

1. PATENTS ⊂⊃328—VALIDITY AND INFRINGEMENT—SKIRT.

The Feuchtwanger patent, No. 662,714, for a skirt consisting of the combination of a hip portion of elastic material, a skirt portion secured to the bottom thereof, and a waistband of greater elasticity than the hip portion, was not anticipated by anything in the prior art and discloses invention and utility. Also, *held* not invalid for prior use and infringed.

2. PATENTS ⊂⊃81—PRIOR USE—EVIDENCE TO ESTABLISH.

To establish prior use to defeat a patent, the proof must be satisfactory as to the identity of the alleged prior structure with that of the patent and as to the date when it was made, and it is unsafe to rely on the unaided recollection of witnesses as to facts long past.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 104; Dec. Dig. ⊂⊃81.]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here on appeal from an order and decree holding that letters patent No. 662,714, granted to the Elmira Skirt Company as assignee of Henry J. Feuchtwanger, was valid and infringed, and awarding an injunction and an accounting. The plaintiff, Green-

wald Bros., Incorporated, is a corporation created by and existing under the laws of the state of Pennsylvania, with its principal office in the city of Philadelphia. The defendant, La Vogue Petticoat Company, Incorporated, is a corporation created by and existing under the laws of the state of New York, with an established place of business in the borough of Manhattan and city of New York. The entire interest in letters patent No. 662,714 is vested in plaintiff by assignments.

Munn & Munn, of New York City (T. Hart Anderson, of New York City, of counsel), for appellant.

Jos. C. Fraley, of Philadelphia, Pa. (Charles Neave, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.   [1] The patent in suit is for a woman's skirt or petticoat. It consists of a petticoat having a hip portion made of elastic knitted fabric such as jersey cloth, a skirt portion made of woven fabric of less elasticity than the hip portion, and a waistband of elastic webbing.   In his specification the patentee says:

"My invention relates to improvements in skirts; and the object of the same is to produce an underskirt which will fit neatly over the hips without wrinkling and be secured snugly about the waist. To accomplish this object, I constructed my skirt of three parts, each of a different material. The first part or lower skirt portion is of nonelastic material, the second or hip portion is of material with a medium modulus of elasticity, and the third portion or waistband is of material having a large modulus of elasticity."

The skirt portion of the garment is made of nonflexible material and uniformly tapers from the bottom up.   The skirt is secured to the hip portion which is wider at the bottom than at the top being designed to fit snugly and smoothly over the hips.   With this end in view the sides may be slightly rounded but in general the elasticity of the material suffices to insure a perfect fit.   The waistband fits tightly the waist.

There are two claims both of which are involved:

"1. In a skirt, the combination, substantially as described, of a hip portion of elastic material, a skirt portion secured to the bottom edge of said hip portion, and a band of greater elasticity than said hip portion, said band being secured to said hip portion at a point near the upper edge thereof.

"2. In a skirt, the combination, substantially as described, of a hip portion of elastic material, which is larger around the bottom than at the top, a skirt portion secured to the bottom edge of said hip portion, and a waistband of greater elasticity than said hip portion, said band being secured to the top of said hip portion."

At the time Feuchtwanger made his invention petticoats were made very full and very wide on the bottom, and his idea was as he testified at the trial, to make a close fitting hip portion without destroying the fullness of the skirt.   His main idea was to make the ordinary full skirt which was worn at that time with a jersey cloth hip portion so as to snugly fit the hip without destroying the fullness of the skirt.

The claim is made that the device of the patent in suit involves no invention and is only a mere aggregation of old and well known

elements. The same claim was advanced in a suit brought on the patent but against another defendant in the third circuit in 1910. In an opinion written by Judge Buffington, the Circuit Court of Appeals held that the Feuchtwanger patent disclosed patentable novelty and invention. Greenwald Bros. v. Enochs, 183 Fed. 583, 106 C. C. A. 351. In that conclusion we join, as we also do in the conclusion to which that court arrived that the Feuchtwanger skirt was not a mere aggregation of old and well known elements. But the law is established that novelty may reside in the arrangement or contribution of old elements whereby an advantageous result is accomplished.

The utility of the Feuchtwanger device is evidenced by the extensive use to which it has been put. The demand for the skirt became so great that the complainant has been unable to supply it and has taken in five licensees. The business is still actively increasing. The skirt is not a cheap article, but notwithstanding that fact over 670,000 of the skirts have been sold by complainant and its licensees, and the royalties alone have amounted to over $54,000. During the period since the patent issued fashions have been changing and the desire for novelties and to get something as good for less money has continued. Skirts whose kind and grade of material are identical with those of the patent, but which lack the peculiar combination of the patent, are offered to the retail purchaser, side by side with the skirts of the patent, at about half the price; nevertheless the demand for the patent skirt has continued to increase. What Feuchtwanger did has proved of advantage to the manufacturer and the dealer. For normal commercial purposes skirts are required which will fit waists from 18 inches up to 42 inches in circumference. Under the Feuchtwanger patent three sizes only need be made up by the manufacturer and kept in stock by the dealer to meet this range of demand for a true ready-made skirt. This is due to the fact that the waistband is highly elastic and may be made very small in diameter, and that the moderate elasticity of the jersey cloth at the hip portion permits a skirt of a given size to expand laterally to such an extent as to accommodate any figure within a range of about eight inches in total diameter. As a clinging and smooth surface is desired around the hips, the closeness with which it fits in thus stretching is an advantage. And the elasticity of the waistband serves a further function in that it distributes the fullness, or required degree of stretching all around the top of the skirt.

The Feuchtwanger skirt also possesses decided advantages for the wearer, because of the accuracy and smoothness of the fit around the hips and to the fact that it does not sag at the waist. And when the skirt is taken off, after having been worn, the hip portion which has been stretched outwards and which would tend to remain in a stretched condition, is drawn inwards by the highly elastic band at the waist portion, which thereby relieves the stretch and tends to restore the knit loops to their initial condition. Moreover, the non-elastic bottom portion of the skirt enables it to be worn with any kind of outer dress, no matter how soft the material or how clinging. In brief, the patent in suit has enabled the manufacturer to standardize

this product and to make up three sizes where otherwise he would have been required to produce at least six. It has enabled the dealer to get along with half as many sizes as he would otherwise have to keep in stock. It has given the wearer a ready-made skirt which requires no alteration and possesses the desired qualities while in use, and which when taken off is automatically restored to its proper shape and dimensions at the critical region.

In the suit brought on this patent in the Third circuit the respondents in their answer cited 70 patents as anticipations, but no proof was taken by them to establish the anticipations. In the suit at bar the defendant alleges in its answer that long prior to the alleged invention by Feuchtwanger it had been disclosed in all substantial and material parts in five letters patent. Of the five so set up, one relates to trousers, one to overalls, one to undergarments, one to an underwaist, and one to skirts. The one which relates to skirts was issued to Julius Mark, April 13, 1877, being United States letters patent No. 189,119. In his specification Mark states:

"The object of my invention is to produce, with the least possible waste of time, labor, etc., as an article of manufacture an underskirt for ladies and children, which, while equaling in cheapness, durability, warmth, and general usefulness, the felt skirt now in common use or the more expensive flannel skirt shall admit of being washed without shrinking, it being manufactured of knit material, substantially in the manner hereinafter more fully described.

"The material of which I propose to manufacture my improved underskirts is the same which is now commonly employed in the manufacture of under shirts for gentlemen or ladies, viz., knit cloth of cotton or other material. These goods are now manufactured in tubes of about 40 inches in circumference. A section of one of these tubes is shown at A, Figure 1; and in manufacturing my improved ladies' skirts I first cut these tubes into pieces of suitable length, the length of each piece being about equal to the length that the skirts are intended to be; next, these pieces are cut open lengthwise, thus producing square pieces of knit cloth B, each about 40 inches wide, and of a length corresponding to the length of the skirts. These pieces are then sewed together, as shown in Figure 3, triangular pieces bb having been previously cut off the sides of each piece so as to give the proper shape to the skirt. Suitable trimmings cc are then sewed on, as shown in Figure 3. Pieces or strips of muslin, tape, or other material are sewed over the hems, as shown in Figure 3 at dd, and the skirt is then ready for use on the market."

The structure of the Mark patent differs in essential particulars from the structure of the patent in suit. The Mark skirt has non-elastic material around the waist and is not "designed to fit snugly and smoothly the hips" as is the patent in suit, but is either to be gathered in, like the ample petticoats seen in Holland, or to be cut and fitted by the purchaser.

The patent for men's drawers, trousers, and overalls do not show, in our opinion, conditions comparable to those characteristic of the skirt of the patent in suit. The Farrington patent, No. 252,201, relates to woven cloth undergarments provided with elastic extremities. Farrington states his claims as follows:

"I claim as my invention:
"1. A pair of drawers composed of an upper cloth part, A, and close fitting lower knit part, B, joined above the calf, substantially as described, and for the purposes set forth.

"2. In a pair of drawers having knit extremities extending from the ankle to a point above the calf, said extremities having two more contractile parts, one about the ankle and the other about the leg, at a point above the calf and below the knee, substantially as described and for the purposes set forth.

"3. In a garment composed of the cloth part *A* and the knit extremities *B*, the upper margin of said knit portions enlarged by increase of stitches to practically equal the cloth part in size, substantially as described, and for the purposes specified.

"4. In a garment composed of a cloth body and knit end, as described, said knit ends produced in a flat web and widened at the top by additional stitches upon the selvage edges to equal the width of the cloth part at the point of juncture and vertically seamed in line with the inclined seam of the cloth part, substantially as and for the purposes set forth."

The Reinfeld patent, No. 623,739, states that the object of the invention "is to construct a pair of trousers which will entirely dispense with the use of buttons and buckles and suspenders to hold up the trousers," and adds:

"I substitute an elastic waistband, with certain accessories by which a snug fit is produced over the hips and waist. The invention is specially applicable to working men and laborers, who are obliged to stand up during a greater portion of the time and to bicyclers, who generally wear a belt to support the trousers. My present invention dispenses with the use of such belt."

His claims he described as follows:

"1. A pair of trousers comprising a body portion, an upper or terminal elastic waistband, elastic tongues depending from the lower edge of the band at the rear thereof, a triangular strip interposed between the rear of the waistband and the body portion, and extending from the outer seam of one leg to that of the other leg, a series of slits cut from the upper edge of said strip the several tongues being stitched to said triangular strip and covering the slits thereof, the parts operating substantially as and for the purpose set forth.

"2. A pair of trousers comprising a body portion, an elastic waistband, elastic tongues depending from the lower edge of the band at the rear thereof, a triangular strip interposed between the rear of the waistband and the body portion, and extending from the outer seam of one leg to that of the other leg, slits cut from upper edge of said strip, one slit at the middle of the strip and one on each side thereof, the outer slits being inclined toward the middle slit, the tongues being stitched to the said triangular strip and covering the slits thereof, the parts operating substantially as and for the purpose set forth."

The Jeresich patent, No. 178,155, was for an improvement in overalls and pantaloons. The object of the invention is set forth in the specification as follows:

"The object of my invention is to so construct a pair of pantaloons or overalls as that they will adjust themselves to and be self-supporting on men of varying girths and will yield to strains in the directions which they will naturally come from in sitting, stooping forward, or in spreading the legs, without danger of tearing or ripping the seams."

Jeresich had a waistband of elastic webbing in the middle of the back of which he inserted a cross-shaped piece of elastic rubber webbing, the lower part of which he inserted in the seat seam down and around in front to the end of the crotch at the lower end of the fly. The inserted pieces of rubber webbing it is stated will yield "to any strain tending to expand the seat and waist laterally." And arms of cross-shaped webbing were inserted in cuts horizontally made

in the small of the back which yield "to a strain put upon the seat in stooping forward."

The Converse patent, No. 513,633, was for an improved underwaist for women. The upper portion of the garment covers the upper portion of the back and the breast and is of knitted fabric which is elastic. The lower portion of the garment which extends about the body under the arms is of fabric which is inelastic and is preferably made of six pieces to admit of a better fit around the body than a less number of pieces would give. The middle of the front portion over the middle of the breast is composed of a fabric substantially inelastic. The specification states that the garment "is especially well adapted to support the lower garments and distribute their weight in a very desirable manner as the chest is allowed full expansion." It is declared that in most cases the lower portion of the garment should be made adjustable as by lacing flaps and cord.

We discover nothing in the above patents to defeat the one in suit. In David v. Harris, 206 Fed. 902, 124 C. C. A. 477 (1913), this court sustained a patent for improvements in sweaters consisting of the attachment to a low-necked sweater of two infolding lapels and a collar, which could be turned up to convert it into a high necked sweater. We said in that case, Judge Coxe writing the opinion:

"The patented feature is an exceedingly simple device, but involves considerable ingenuity and is evidently popular with the trade and with buyers. It is not found in the prior art. Somewhat similar attempts were made in coats and shirts, but we cannot find that the idea had occurred to any one, prior to Weinschenk, to convert a sweater into a garment capable of two such uses accomplished by such easy transformation."

And in the case at bar, as in David v. Harris, the patented feature is an exceedingly simple device but one which involves some ingenuity, and it is not found in the prior art. The use made of elastic webbing in pantaloons or overalls by which they were made self-supporting affords no analogy except in the fact that the garments stretch at the waist. The insertion of the elastic waistbands shown in the patents for masculine attire would not produce the skirt of the patent in suit. The stretching at the waist in drawers and trousers as provided for in the patents has no relation to any specific purpose or behavior called for by the desire to have a close and clinging fit at the region of the hips.

[2] As to the defense of prior use which has been interposed, it is to be remarked that there are two features as to which the proof must be satisfactory:

(1) The identity of the alleged prior structure with that of the patent must be shown.

(2) And the date at which the alleged prior structure was made must also be disclosed.

The court below thought the evidence of prior use was too vague and uncertain to establish that requisite degree of certainty adopted as the test in such cases. It is clearly unsafe to rely upon the testimony of witnesses depending entirely upon memory of contemporaneous facts long past and uncorroborated by any recorded data. The evidence on this matter is fatally defective, in that it absolutely

fails to fix with sufficient accuracy the date of the alleged anticipating manufacture and sale. The cross-examination of defendant's witnesses disclosed the fact that no effort had been made to look up books, memoranda, or any contemporaneous records for the purpose of fixing the date of the use now claimed to have been prior to that of the patent in suit. The character of the evidence offered on this subject is quite unsatisfactory and unconvincing. For example, one of defendant's witnesses who was a salesman in the employ of Ryan & Green testified that that firm was manufacturing petticoats identical with those of the patent in suit when he entered the employ of the firm in 1899. He did not give a single circumstance in corroboration of the date of his employment or of the fact that the manufacture of the skirts went back to the commencement of his employment and admitted on cross-examination that he had never made any investigation in regard to the date of sales or the names of customers. He nevertheless professed to remember the names of customers to whom he sold such petticoats in 1899, and he professed to remember the color of the skirts he then sold. He was asked to name customers to whom he had sold skirts in more recent years, and he said that he could not remember the name of any customer or the color of any of the skirts sold in such years. He even professed to give the trade number of skirts sold in 1899. He was contradicted by a member of the firm called by the complainant who testified that his firm made no such petticoats down to 1902 when he retired from the firm. We shall not review the testimony of the other witnesses. It must suffice to say that we do not find adequate testimony to establish the prior use. There is testimony in the record given by witnesses who had been engaged for years in manufacturing skirts, whose business it was to keep themselves acquainted with the skirts on the market, and who were associated with the largest manufacturers of skirts in the United States, and who testified that they never saw or heard of a skirt like that of the patent in suit until they saw the skirt manufactured by the patentee.

We have no doubt that defendant's skirt infringes. It has the three elements of complainant's skirt: The lower skirt portion of nonelastic material, the hip portion of moderately elastic material, and the waistband of very highly elastic material. The fact that the skirt of defendant has a greater length downwards of the hip portion, and a consequently smaller length upwards of the lower skirt portion, is not important. No limitation of the length of the respective sections of the skirt is found in the claims.

Judgment affirmed