MUNSON MFG. CO. v. DEERE & CO.

(Circuit Court of Appeals, Seventh Circuit. January 7, 1919.)

No. 2614.

PATENTS ☜328—VALIDITY AND INFRINGEMENT—REVOLVING CLOD FENDER.

Munson patent, No. 1,025,420, claims 1 and 4, for an improved revolving clod fender for use with a corn cultivator, *held* not anticipated and valid, and infringed by a device of similar shape and operation, but constructed of malleable castings, instead of wire, as described in the claims.

Appeal from the District Court of the United States for the Northern Division of the Southern District of Illinois.

Suit by the Munson Manufacturing Company, a partnership, against Deere & Co., a corporation, for infringement of patent No. 1,025,420. From a decree dismissing complainant's bill, complainant appeals. Reversed, with instructions to enter decree for complainant.

W. R. Bair, for appellant.

Albert H. Adams, of Chicago, Ill., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVANS, Circuit Judge. The patent to Munson, No. 1,025,420, covering a "revolving clod fender," describes a device attached to a corn cultivator standing between the cultivator shovels and the plants; its function being to permit a quantity of fine earth to roll up close to and around, but not covering, the plants.

There have been two kinds of clod fenders—one, the stationary kind, consisting ordinarily of metal sheets interposed between the shovel and the plants; the other, to which appellant's device belongs, is known as the rotary clod fender. These fenders are disc-shaped devices formed with toothed or serrated edges and designed to turn on their axes by reason of the contact of the edge with the earth. The prior art con-

tained such fenders with openings or slots through which some fine earth could pass. The following illustrations will show types used prior to Munson's patent:

Fig. 1.          Fig. 2.          Fig. 3.     Fig. 4.

The two claims in suit are 1 and 4, and they read as follows:

(1) A revolving clod fender, comprising a suitable hub and spokes radiating therefrom, said spokes being formed of looped wire secured to the hub at their open ends.

(4) In combination with a cultivator having spaced beams, stems fixed at their forward ends to said beams, said stems converging rearwardly and bent into parallel planes at their rear end portions, pivot bolts in rear end portions of said stems, and revolving clod fenders mounted on said pivot bolts and spaced apart, said fenders comprising radiating spokes of looped wire clamped together at their open ends.

That such slight changes would produce new results or new functions might well seem, on first impression, questionable.

It is claimed, however, and the evidence seems to support the claim, that the fender with the loop structure made it possible for the operator to better loosen the ground, and put the dirt close to and around the stalks of corn and at the same time quite effectively prevent the covering of the young plants.

More specifically, it was claimed that the fine earth is piled up around the stalks; that the loops which have been imbedded in the fine earth by reason of the operation of the shovels carry some of the earth upward and toward the plants; that where the plants, for some reason are knocked to one side by the dirt, the loops in the clod fender draw the leaves of the plant out from under the dirt, thereby avoiding stops by the operator to uncover the plants.

The evidence shows that plaintiff's device went into immediate and extensive use. While this may have been in part a matter of advertising and the result of appellant's energy in pushing its product on the market, it was not necessarily or entirely so. Appellee's experience confirms appellant's claims. It used rotating fenders in the early eighties and sold many between the years 1885 and 1890. Thereafter the rotating fender went out of the market and was not again used until 1916, when appellant's device came into use. Thereupon appellee, having the merits of the fender fully set forth to it by Munson, provided some of its cultivators with the infringing device, and its use by appellee multiplied with surprising rapidity.

The best prior art citations are Hench (Fig. 2), Eisenhart (Fig. 1),

and Allison (Fig. 3). Eisenhart's patent deals with cultivators, a fender merely being shown in the drawings. The patent to Hench also deals with improvements in cultivators; the disclosed fender being quite similar to the one which appellee adopted and later discarded. The Allison patent covered a fender (see Fig. 3), the claim being as follows:

"The arrangement of the rotary perforated clod guards *n n* combined with the plows *b b*, and beams *D D*, constructed and operating as herein set forth."

In his specifications Allison says:

"On the inside of each of the inside plows *b b*, I place clod guards, *n n*, which are little wheels suspended by rods *p p* to the plow beams, and made with spokes or open lattice work of any kind, to allow the finer soil to sift through as they travel alongside of the plows when at work, while the larger clods are turned aside and prevented from being thrown upon the young plants."

Appellant's assignor did not, of course, patent a revolving clod fender as such, but merely the specific construction or fender described in the claims quoted above.

The file wrapper does not detract from the force of appellant's claims. The first claims filed were too broad and were rejected. Present claims 1 and 2 and others were then presented, and the examiner rejected original claim 4, because completely covered by present claim 1, stating that—

"Any novelty in the claim resides in the specific construction of the fender."

With this ruling claimant acquiesced. In this we find nothing inconsistent with appellant's present asserted position. We conclude both claims are valid.

*Noninfringement.*—Appellee bases its defense of noninfringement upon the use of the word "wire" in the two claims involved. That its infringing fender otherwise responds to the claims in question is not open to dispute.

Herewith is presented a figure of appellee's fender, with each alternate loop removed and loops taken from the Munson clod fender substituted.

Grant appellant's invention is not a pioneer, and his claims are limited, and that he deals merely with an improvement in a revolving fender, yet a fair application of the doctrine of mechanical equivalents, we think, compels us to include appellee's structure. With appellant's device before it, with its merits and advantages fully explained by a representative of the Munson Manufacturing Company, appellee constructed a fender which, outside of the material and the way it was made, is in all respects similar to appellant's fender. Appellee, however, makes its fender of malleable castings.

Although using the word "wire" in its claim, the patentee should not be restricted to this material, nor should appellee be permitted to escape infringement by reason of the substitution of malleable castings for wire. While the substitution of different materials may, under certain circumstances, avoid infringement by the user, such a conclusion could not well be reached in the present case. All the previously used revolving fenders were made of metal, some of steel, some of malleable castings. In the prior art citations of the Patent Office were revolving wire fenders. The novelty could not be said then to lie in the metal. The problem which Munson successfully attacked was solvable, not by the use of a particular metal, but by the construction of the loops. We think infringement is shown.

The decree is reversed, with costs, with instructions to enter a decree in complainant's favor for an injunction and an accounting.