**RAJAH AUTO SUPPLY CO. v. BELVIDERE SCREW & MACHINE CO. et al.**

(Circuit Court of Appeals, Seventh Circuit. April 26, 1921. Rehearing Denied August 19, 1921.)

No. 2889.

1. **Patents ⬅157(1)—Patentee's definition of words, phrases, and terms accepted by court.**

A patentee may define his own terms, regardless of common or technical meaning, and his definition of words, phrases, and terms will be accepted by the court.

2. **Patents ⬅328—825,856, for spark plug featured by "soft-metal bushings," held infringed.**

Mills patent, No. 825,856, for spark plug featured by "soft-metal bushings" described as tapered or beveled bushing of such length as to be upset under pressure, held infringed by manufacture of cold rolled steel bushings, the term "soft-metal" not referring solely to the metals sometimes or frequently claimed as soft, but to a particular bushing which possesses the quality of a soft yielding material and will upset under pressure.

3. **Patents ⬅289—Laches not sufficient to bar rights of patentee as to future infringements.**

Laches may be one and a most important element in proving estoppel, but ordinarily, where laches alone is shown, patentee should not be barred

from asserting his rights under the patent so far as future infringements are concerned, though he may because of that fact alone, be refused damages for past infringements.

**4. Patents ⬅289—Delay in commencement of infringement suit held not to constitute laches or establish estoppel.**

Delay in commencing of action for infringement of spark plug patent did not constitute laches or estop patentee from complaining of infringement, where defendant had promised patentee to cease manufacturing the spark plugs covered by patent.

**5. Patents ⬅312(1)—Burden of proving laches and estoppel on defendant.**

In patent infringement suit, defendant had burden of proving defenses of laches and estoppel.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Bill by the Rajah Auto Supply Company against the Belvidere Screw & Machine Company and another. Decree of dismissal, and complainant appeals. Reversed, with directions.

See, also, Rajah Auto Supply Co. v. Emil Grossman Co., 188 Fed. 73, 110 C. C. A. 143; Same v. Rex Ignition Mfg. Co. (D. C.) 209 Fed. 622.

Emerson R. Newell, of New York City, for appellant.
Wallace R. Lane, of Chicago, Ill., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVANS, Circuit Judge. Appellant's patent deals with a spark plug. Mills, the patentee, says in his specifications:

"It has been found that where an earthenware shank—such, for example, as porcelain—is used with an unyielding bushing screwing down upon a collar on the same there has been great danger of cracking the shank, because the pressure when the bushing was screwed down too tight or the expansion of the shank when heated would cause the porcelain to crack, even when a packing material is used. The embodiment of my invention illustrated avoids both these objections, and also avoids the necessity of providing a gasket between the bushing and the collar of the shank. * * *

"The bushing is preferably formed of soft brass, and I prefer to sharpen or bevel the edge of the same, * * * so that when the bushing is screwed down this edge—that is, the portion which contacts with the shank—will be upset and will turn outward. In this way a close fit will result, and even if the bushing is screwed down too tightly the porcelain will not be cracked, as the bushing will yield and upset further. Substantially the same result will occur if the shank expands under the heat of combustion. The shank is, furthermore, thicker above the enlargement, and therefore stronger than would be the case if the sides of the shank above the enlargement were parallel."

Claims 1, 2, 3, and 6 alone are involved, and the two broadest claims, 1 and 2, are herewith set forth.

"1. In a spark plug in combination, a socket having a screw thread and a shoulder, a shank of insulating material having thereon an enlargement adapted to rest on said shoulder and tapering upward from said enlargement and a threaded bushing surrounding said tapered portion and screwing upon said socket to press the bushing against the tapered portion, the bushing where it presses upon said tapered portion being formed of soft metal whereby it is adapted to be upset by said pressing upon said tapered portion, said bushing being of a sufficient length to cause such soft-metal portion to be upset.

"2. In a spark plug in combination, a socket having a screw thread and a

shoulder, a shank of insulating material having thereon an enlargement adapted to rest on said shoulder and tapering upward from said enlargement, and a threaded bushing surrounding said tapered portion and screwing upon said socket and adapted to press against said tapered portion, the lower edge of said bushing being formed of soft metal and adapted to be upset when screwed down upon said tapered portion."

Three defenses are interposed—invalidity, noninfringement, and estoppel. Neither in this court nor in the District Court was the defense of invalidity seriously urged. It hardly merits serious consideration. The patent was early sustained by the Circuit Court of Appeals for the Second Circuit, affirming the decision of the District Court. Both opinions may be found in Rajah Auto Supply Co. v. Emil Grossman Co., 188 Fed. 73, 110 C. C. A. 143 et seq., and reference is made to them for a more complete description of the patent and the art to which it applied. There has not been, since these decisions, a serious challenge of the patent's validity.

The chief defense relied upon in the District Court was estoppel, but noninfringement is also urged in this court. The latter defense is based upon the asserted distinction between "soft-metal bushings," described in the patent, and "cold rolled steel bushings," such as appellee uses. Insisting that "soft-metal bushings" is synonymous with "soft brass metal bushings," and that appellant is necessarily limited by its patent thereto, appellee seeks to avoid liability by reason of its use of a metal ordinarily classed as hard.

Neither the specifications, the claims, nor the file wrappers justify such a limitation. Patentee sought protection for a bushing which, when screwed down tightly, would not crack the porcelain, but would "yield and upset further." He described a bushing which was "adapted to be upset by said pressing upon said tapered portion"—a "bushing * * * of a sufficient length to cause such soft-metal portion to be upset." At no place in the record have we found patentee's asserted position to be different from the one now taken. Cold rolled steel, if thin enough, may well be called soft metal. It will upset.

[1, 2] We have so frequently said that each patentee may define his own terms, regardless of common or technical meaning, that it is unnecessary to refer to these decisions. Fairness to any patentee requires the court to accept his definition of words, phrases, and terms. Patentee meant by the words "soft-metal" a material which would upset, or was adaptable to be upset, when under pressure such as is applied to a spark plug. What he was contributing to the spark plug art was the combination with a bushing possessing yielding and close-fitting qualities which would eliminate or tend to lessen breakage in the porcelain and also would tend to prevent oil leakage. In using this term "soft-metal" he was not referring solely to the metals sometimes or frequently classed as soft, but was referring to a particular bushing which possessed the qualities of a soft, yielding material, one that would upset under pressure and thereby accomplish certain results. Certainly, the expression "hard steel" is not unknown or unusual. It follows that, if there be a "hard steel," there must be a soft steel. "Soft" and "hard" are relative terms at best, and the matter of degree must often be determined by other language with which the words are used.

Patentee, in each claim, modified his description of "soft-metal" by defining the bushing to be tapered or beveled, and of such length as to cause it to upset under pressure. In other words, any metal shaped and sized as patentee's bushing, that would upset under pressure such as is ordinarily applied to a spark plug, is what patentee intended to include in his term "soft-metal." It would therefore be an unjustifiable limitation of this invention to exclude cold rolled steel made so thin that it will bend and yield and upset readily under pressure and similarly to brass or other metals which in more bulky quantities may with propriety be referred to as soft. In Munson Manufacturing Company et al. v. Deere & Co., 257 Fed. 318, 168 C. C. A. 402, this court, upon the facts there disclosed, rejected the defense of noninfringement where it appeared that patentee described a "looped clod fender" as "being formed of looped wire," the infringing structure being made of malleable iron.

Noninfringement is further urged because it is claimed defendant's bushings do not upset under pressure. It may be that some of defendant's bushings do not, but the record clearly and satisfactorily establishes that certain of defendant's spark plugs, notably exhibits 6, 7, 8 and 10, are supplied with bushings "adapted to be upset when screwed down upon said tapered portions." The experiments made by various witnesses with defendant's spark plugs where pressure was applied upon these bushings demonstrate that they not only were adaptable to upsetting, but that they actually did upset. Our attention has not been called to any testimony that contradicts or casts doubt upon the figures given by the witness who made the measurements with the micrometer before and after pressure, and we have no doubt but that certain of appellee's spark plugs infringe.

Estoppel: Failure of counsel to distinguish between laches and estoppel may account for some of the confusion which appears in that part of the brief devoted to a discussion of this defense. Appellee contends that it made many spark plugs of the kind and description now complained of, to the knowledge of appellees and without opposition, and that because of appellee's delay in insisting upon its rights it is now estopped to assert its monopoly. This court had occasion to speak of the effect of laches as such as distinguished from an estoppel in Wolfe v. U. S. Slicing Machine Company (C. C. A.) 261 Fed. 195. There it was said:

"But it does not follow that, because appellee failed to assert its rights for seven or more years, it should be denied any and all relief in this suit. * * * The evidence, we think, discloses such laches as to prevent appellee from collecting damages for past infringements, but fails to establish an estoppel."

[3] True, laches may be one, and a most important element in proving estoppel, but ordinarily, where laches alone is shown, patentee should not be barred from asserting his rights under the patent so far as future infringements are concerned, though he may, because of that fact alone, be refused damages for past infringements. McLean v. Fleming, 96 U. S. 245, 257, 24 L. Ed. 828; Menendez v. Holt, 128 U. S. 514, 523, 9 Sup. Ct. 143, 32 L. Ed. 526.

[4] In the present case, the evidence fails to satisfy us that there

was established laches or estoppel. The patent was issued July 10, 1906. There were numerous spark plugs upon the market. Types and material were constantly changing. The great and growing popularity of the gasoline engine and the importance of the spark plug in its successful operation made experiments and frequent changes in spark plug construction inevitable. Appellant demanded of its competitors respect for its patent and brought suit against one for infringement. The decision heretofore referred to was pronounced in the District Court January 24, 1911. It was affirmed upon appeal shortly thereafter. Appellant then advised all competitors of its patent and the court's rulings thereon, and threatened suit against those that did not cease infringing. Among the recipients of this notice was the Motor Accessories Manufacturing Company, the predecessor of appellees. This company, when thus notified and warned, sought, but was refused, a license. It then ceased making the type of spark plug of which appellant complained. Another spark plug made by this company was brought to appellant's attention, and another warning letter was sent, and the Motor Accessories Company promptly replied, a portion of which letter is herewith reproduced:

"* * * Will say that we have discontinued the manufacture of plugs as we agreed to on the bushing as per our conversation while there and we discontinued at the time we said we would.

"Now in regard to our last letter advising that we were manufacturing under Schmidt patent, No. 999,343, we have taken this proposition up with the Champion Ignition Company, who are owners of the Schmidt patent, and have been waiting their advice in regard to same. But, on the other hand, we discontinued making up the Schmidt patent shortly after hearing from you.

"Sincerely hoping that this takes care of your correspondence of November 14, we remain as ever,

"Yours very truly,                    Motor Accessories Mfg. Co."

In view of this letter, appellee's present argument in support of its defense of laches or its defense of estoppel is not very persuasive. Having first recognized appellant's monopoly, it sought a license. Unable to obtain one, it modified its structure. Again confronted with threatened suit, it assured appellant that it had ceased infringing just as it had agreed to do by word of mouth on a previous occasion. Appellee now asks the court to find appellant guilty of laches for fully accepting appellee's promise. Certainly appellee should be the last to complain because appellant relied upon its spoken and its written agreement.

[5] Appellant stoutly maintains that it had no knowledge, up to a short time prior to the commencement of this suit, of appellee's manufacture of the infringing spark plug. The only evidence that tends to dispute its assertion is the fact that appellee's spark plugs were in extensive use and must therefore necessarily have come under the observation of its rival. This evidence alone would hardly justify a finding of laches, much less estoppel. But the record is by no means clear that the spark plug complained of was so extensively used, or that its production covered such a period of time as appellee urges. The bur-

den of proving either defense is upon the appellee. We conclude it has not overcome the burden.

The decree is reversed, with directions to enter an injunction and order an accounting.