HEWES et al. v. GAY et al.

(District Court, D. Connecticut. January 29, 1926.)

No. 1647.

1. **Courts** ⊂⊃37(3)—Court has jurisdiction of real defendant, not made party to suit, but who conducts defense of nominal defendants.

Company, which, although not made defendant, was real defendant to patent infringement suit, *held* to have submitted itself to jurisdiction of court by conducting defense and conceding that counsel, who represented nominal defendants was attorney for real defendants.

2. **Patents** ⊂⊃72—Proof of identity and date of making essential to defense of prior use.

Identity of alleged prior structure with that of patent in suit must be shown, together with date at which alleged prior structure was made, to establish defense of prior use.

**3. Patents ⊚⇒59—Date of alleged prior use immaterial, when not adapted to use intended by patent in suit.**

Date of alleged prior use of wire frame in making four-in-hand ties *held* immaterial, when not intended or adapted for use in shaping bow tie, as structure called for by claims of patent in suit.

**4. Patents ⊚⇒328—Infringement is not avoided by substituting one material for another.**

Infringement ·of patent No. 1,419,137, for made-up bow neckties having pliable metal or wire frame, *held* not avoided by substituting a composite pliable frame.

**5. Patents ⊚⇒328—Bow tie patent held decided advance in neckwear art, and entitled to fair range of equivalents.**

Patent No. 1,419,137, claims 1, 2, and 3, relating to bow ties, *held* to mark a decided advance in neckwear art, and entitled to include a fair range of equivalents.

**6. Trade-marks and trade-names and unfair competition ⊚⇒75—Courts consider whether ultimate consumer, rather than dealers, are likely to be misled.**

On question of unfair competition, courts consider whether ultimate consumer or purchaser, rather than dealers, will probably be misled.

**7. Trade-marks and trade-names and unfair competition ⊚⇒93(3)—Intent to simulate or closely copy display card for neckties held established.**

Intent of manufacturers of bow neckties to simulate or closely copy display card used by another *held* established.

**8. Trade-marks and trade-names and unfair competition ⊚⇒70(3)—Use of word "Par" as necktie trade-mark held not to infringe trade-mark "Spur" for same product.**

Use of word "par" as trade-mark for bow neckties *held* not per se to infringe trade-mark "Spur" for same product.

**9. Patents ⊚⇒328—1,419,137, claims 1, 2, and 3, for made-up bow necktie, held valid and infringed.**

Hewes patent, No. 1,419,137, for made-up bow neckties, claims 1, 2, and 3, *held* valid and infringed.

**10. Trade-marks and trade-names and unfair competition ⊚⇒70(1)—Unfair competition of necktie dealer held established.**

Seller of made-up bow neckties, using display card furnished by manufacturer, which closely simulated display card of another manufacturer of patented bow ties, *held* guilty of unfair competition.

**11. Patents ⊚⇒322—Trade-marks and trade-names and unfair competition ⊚⇒99—Reference for assessment of damages for infringement and unfair competition held unwarranted, in view of amount involved.**

Where defendants, in necktie manufacturer's patent infringement and unfair competi-

tion suit, as dealers, had only purchased 12 dozen of infringing articles, *held*, amount involved was too small to warrant reference for assessment of damages.

In Equity. Patent infringment suit by James A. Hewes and another against George A. Gay and others. Judgment for plaintiffs.

Charles F. Perkins, of Boston, Mass., and W. Clyde Jones, of Chicago, Ill., for plaintiffs.

George E. Mueller, of Chicago, Ill., for defendants.

THOMAS, District Judge. This bill was brought by James A. Hewes and Frank W. Potter, a partnership doing business in the city of Boston under the firm name of Hewes & Potter, for alleged infringement of letters patent No. 1,419,137, granted June 13, 1922, to the complainants as assignees of James A. Hewes, as well as for unfair competition. The patent relates to men's neckwear and the article of the patent in suit is a bow necktie. The defendants are residents of the city of Hartford, and as a copartnership conduct a large department store, and do business under the firm name of Brown, Thomson & Co. In this suit they are nominal defendants.

[1] The real defendants, the manufacturers of the alleged infringing device, and the ones particularly claimed to be guilty of unfair competition, are Louis B. Steiniger, William M. Reese, and Merle W. Reese, copartners in business under the name of Grip Bow Tie Company, of Omaha, Neb., from whom the defendants in this suit purchased, in very small quantities, the articles which are the subject of this suit, in order to sell the same to their retail customers. While the Grip Bow Tie Company is not a party to this suit, plaintiffs contend that they are the real defendants, and have submitted themselves to the jurisdiction of this court by conducting the defense, and by conceding that counsel who represented the nominal defendants is attorney for the real defendants, and in this contention the plaintiffs are correct.

The patent in suit describes and claims a moldable bow necktie. The structure is a skeleton frame of pliable metal having the general outline of a bow necktie, the narrow central section of which is supported within the knot of the bow tie, while the expanded ends thereof project freely and loosely into the bows or wings of the tie. The object of having the pliable frame fit loosely and freely within the wings of the tie is to permit the pliable frame to control the general

position of the wings, leaving the fabric thereof free to assume its own surface conformation.

The advantage of the patented tie, over the made-up bow ties formerly in use, lies in the fact that the patented tie resembles a bow necktie tied by the wearer, leaving latitude for some individual effect in the arrangement and conformation of the bows or wings in different relative positions to suit the taste of the wearer. The patent contains three claims, all of which are alleged to be infringed by the devices sold by the defendants, and these claims are as follows:

"1. A bow necktie, including a frame of pliable metal having the general outline of a bow necktie and being readily bendable to impart a variety of shapes to the tie at the will of the wearer.

"2. A bow necktie, including a frame of pliable wire having the general outline of a bow necktie and being readily bendable to impart a variety of shapes to the tie at the will of the wearer.

"3. A bow necktie, containing a skeleton frame having the general outline of a bow necktie, substantially smaller than the outlines of the bow, said frame being composed of pliable wire, readily bendable to impart a variety of shapes to the tie at the will of the wearer."

The defenses relied upon are prior public use, anticipation, nonpatentability and noninfringement. The patented bow necktie has had a rather unusual commercial success, and it has practically driven the old-style readymade bow necktie from the market, as it had no pliable frame inserted into it, and therefore was not moldable to the will of the wearer. The record shows that the sales of the old-style bow tie were negligible prior to the date of the patent in suit. The patented tie created, in a certain sense of the word, a new industry, and the proofs show that there is now a considerable number of manufacturers in the United States making moldable bow ties having pliable frames or inserts. The Grip Bow Tie Company adopted the pliable frame shortly after the plaintiff's bow tie appeared on the market, and they now manufacture practically all of their bow ties with such frames or inserts.

Defendants contend that the success of the patented tie is due to the enormous advertising campaign carried on by plaintiffs, and to the large sales force by them employed, as well as to the attractive appearance and style of plaintiffs' bow as compared with the "old-fashioned bow," which all of plaintiffs' dealers previously sold, and, furthermore, that the success of the patented tie is due to the use of an elastic band fastener, which makes the bow suitable for use on any style of collar including the semisoft collars in vogue in recent years. These claims do not seem to be well founded, because it appears that the amount spent for advertising and sales efforts is not exceedingly large for a business of the volume of that conducted by plaintiffs, particularly when it appears that plaintiffs had to protect themselves against a multitude of imitators, and, further, because attractive designs can be embodied just as well as in bow ties without inserts as in the patented bow tie, and finally because elastic bands can be used just as well on bow ties without pliable inserts as in the patented structure.

### Prior Public Use.

[2, 3] It is a well-settled rule respecting the defense of prior public use that the identity of the alleged prior structure with that of the patent must be shown, and that the date at which the alleged prior structure was made must also be disclosed. Greenwald Bros. v. La Vogue Petticoat Co., 226 F. 448, 141 C. C. A. 278. A number of witnesses were called by the defendants to show the use of pliable wire inserts in the neckwear industry, and the witness Schulz produced Exhibits 4 and 5, showing that the wire inserts were used many years ago in the knots of madeup four-in-hand ties, not to impart a variety of shapes to the bow knots, but only to help to retain the shape of the same. They were not intended to, nor were they adapted to impart a variety of shapes to the tie at the will of the wearer, as called for by the claims of the patent in suit. The date, therefore, when the alleged prior structures were first made, is not material.

### Prior Patents.

It seems unnecessary to go into a detailed analysis and discussion of each of the prior patents, but it is sufficient, I believe, to say that none of them disclose the use of either a frame of pliable metal or of a skeleton wire frame in a bow necktie, or any other wearing apparel having the general outline of a necktie, and being bendable or moldable to impart, at the will of the wearer, a variety of shapes to the tie or other apparel. The Deshane patent, No. 1,340,755, issued May 18, 1920, describes a tie holder in the form of a wire frame, which is necessarily made of spring wire and cannot be made of pliable wire. The same is true of the Peterson patent, No. 733,871, issued July 14, 1903.

Defendants argue that pliable wire frames have been used for many years in the bow knots of ready-made four-in-hand ties, having reference to Defendants' Exhibits 4 and 5, and therefore the use of pliable metal inserts for bows and other articles was well known prior to the Deshane patent. It does not appear, however, that, as stated above the inserts in Defendants' Exhibits 4 and 5 were used, or intended to be used, or adapted to be used, to impart a variety of shapes to a tie at the will of the wearer.

The only other patent which describes a necktie is the one issued on May 29, 1917, to Schloerb, No. 1,227,677; but an examination of this patent shows that the fabric of the tie and the clasp, denoted by the numeral 12 in the patent, always assume the same relation and shape. There is no loose fit between the clasp and the material of the necktie, which will permit free movement between these two elements. All other patents relied upon relate to shoe bows and flexible supports for hat trimmings, having no relation to the art in which the device of the patent in suit is included. Aside from this, the shoe bows are not moldable, in the sense that the patented tie is moldable, and there is no loose fit between the frames thereof and the material of the bows. I conclude, therefore, that the three claims of the patent in suit are not anticipated and that they are valid.

[4, 5] It is argued by the defendants that their bow ties do not employ "a frame of pliable metal," as called for in claim 1, or "a frame of pliable wire," as called for in claim 2, or "a skeleton frame composed of pliable wire," as called for in claim 3. It is admitted, however, that they use a pliable frame, and there is no question but that their bow necktie has moldable wings; that the pliable frame is of the general contour of the bow tie; that it has a narrow or restricted central portion in the knot of the tie; and that the wings of the frame fit loosely and freely within the bows or wings of the tie, so that the necktie wings are moldable into different positions or shapes at the will of the wearer. Defendants' pliable frame, therefore, performs the same function as the frame in the patented structure.

The defendants argue, however, that the patent in suit is not a pioneer or primary patent, and at best can only be held to be a secondary patent, and therefore not entitled to a broad range of equivalents. Now, it appears that defendants' frame, instead of being made wholly of pliable metal, is a composite frame in which the pliable wire extends throughout the length of the frame. The wire and other component parts of the frame are firmly secured together, and constitute, for the intended purpose, one piece of material, which is affected throughout by the pliable character of the wire, so that the entire frame bends when the wire bends, and is held in the bent position by the wire. Defendants' frame, therefore, as a whole, cannot be distinguished from the patented pliable frame in operation, function, and result, and the defendants do not avoid infringement by substituting one material for another, by substituting a composite pliable frame for the pliable metal frame of the patent; and this is true, no matter whether plaintiffs' invention is called a pioneer, or a primary, or even a secondary, invention.

The invention disclosed by the patent in suit marks a decided advance in the neckwear art, and the patent is therefore entitled to include at least a fair range of equivalents. It seems to me that there can be no question but that the patent is entitled to a construction broad enough to include a bow tie containing a frame loosely supported therein, if the frame is made of a pliable material, either in whole or in part, and sufficient to operate substantially as described in the patent. Morley Sewing Machine Co. v. Lancaster, 129 U. S. 263, 9 S. Ct. 299, 32 L. Ed. 715; Electric Smelting & Al. Co. v. Pittsburg Reduction Co., 125 F. 926, 60 C. C. A. 636; Thomson-Houston Electric Co. v. Ohio Brass Co. (C. C.) 130 F. 542; Munson Mfg. Co. v. Deere & Co., 257 F. 318, 168 C. C. A. 402.

## Unfair Competition.

[6, 7] There can be no question but the defendants' bow necktie is so featured by defendants' display card that it is very likely to be taken for the plaintiffs' article by the ordinary purchaser in the retail stores where the ties are sold. The close similarity between the defendants' display card and plaintiffs' display card is sufficient to evidence the necessary intent to mislead. The plaintiffs have expended large sums of money in advertising, and it makes no difference that dealers in the article may not be deceived. It is the probable experience of the ultimate consumer or purchaser that the courts consider. National Biscuit Co. v. Baker et al. (C. C.) 95 F. 135. Indeed, the resemblance between the two cards is striking. Each has the portrait of a young man wearing a bow tie. The difference between the words "Spur Tie" and "Par Tie" is small, and, when looking at the whole card, it is almost negligible. The

words, even, are somewhat similar in appearance. They are both about the same size, and they are identical in color. The plaintiffs' card reads, in black type:

NOTE PATENTED FEATURE
GIVES THAT JAUNTY APPEARANCE
THAT IMITATIONS LACK

While defendants' card, in the same size and color of type, red or black, reads:

NOTE PATENT FEATURE
GIVES THAT JAUNTY APPEARANCE
THAT IMITATIONS FOLLOW

The variation is so slight as to make the two cards nearly identical; and the price, 50 cents, is at the same place on each card, in the same color of type, and in substantially the same sized type. The similarity between the two cards is striking, and, while it is true that the defendants' card varies in some minor particulars, yet, if it did not, it would simply be a Chinese copy of plaintiffs' card. The conclusion is imperative that the similarity is so striking that the ordinary purchaser woult be misled, and that a comparison of the two cards shows conclusively that the real defendants, the manufacturers, intended to simulate or closely copy the plaintiffs' card.

[8] The words "Spur" and "Par," here involved, are not, per se, confusingly similar in appearance or sound, nor do they convey the same idea. I therefore conclude that the use of the word "Par" by the defendants, per se, does not infringe complainants' trademark "Spur."

[9, 10] I hold, therefore, that claims 1, 2, and 3 of the patent in suit are valid and infringed, and that defendants have practiced unfair competition in the use of their display card.

[11] Inasmuch, however, as it appears that the defendants in this suit have purchased not more than 12 dozen of the ties in issue, it is obvious that the amount involved is too small to warrant the expense of a reference to a master for the assessment of damages for the infringement of plaintiffs' patent and for unfair competition.

As it is apparent that the plaintiffs have come into this court for the sole purpose of obtaining an adjudication of their patent, no costs will be taxed against either party.

Judgment may therefore be entered for plaintiffs in accordance with the views herein expressed.