REIDENBACH v. A. I. NAMM & SON.
SAME v. KOPS BROS., Inc.
Nos. 8368, 8369.

District Court, E. D. New York.
March 3, 1938.

W. E. Warland, of New York City, for plaintiff.

Merrell E. Clark and William J. Barnes, both of New York City, for defendants.

INCH, District Judge.

Plaintiff, the alleged inventor and the owner of a patent, brings these two suits for alleged infringement. The first suit is against the retailer, the other is against the manufacturer. The issue is the same in both suits. The evidence in one is applicable to the other. The parties duly agreed to try both suits together. One decision therefore will decide both suits although there must be separate decrees.

Plaintiff's patent was applied for June 15, 1934 and granted June 11, 1935, U. S. No. 2,004,730.

It is undisputed that plaintiff never put on the market, in a commercial way, the article which she claims to have invented. She asserts, however, that the fairly successful commercial article of the defendant infringes her patent.

Plaintiff's invention relates to girdles to be worn by women, which girdle is known generally as the "step-in" girdle, and of the "two-way stretch" type. In her patent plaintiff describes the usual manner of making such girdles and sets forth that "the difficulty with this type of girdle is that there is nothing to hold it down in the back because there are no stays and no hose supports at the back. The elastic webbing does not adhere to the flesh of the wearer and the result is the girdle creeps or rides upwards so that the top edge rolls into a ridge, which cuts into and pushes up the flesh of the wearer at the waist band rendering the garment extremely uncomfortable. In addition to discomfort, the ridge shows through the outer clothing of the wearer and the wearer has to frequently pull the girdle down by grasping the girdle with the hand through the outer clothing and pull down both the girdle and the clothing together". (Lines 12–26, Page 1, of Patent.)

She then goes on to state that she overcomes these difficulties "by placing a piece of sheet rubber on the lower part of the inside of the rear of the girdle". (Lines 27–29, Page 1, of Patent.)

The patent then goes on to state that the ordinary type of girdle on the market can only be held down by hose supporters and that if a woman desires to wear stockings without attaching them to the girdle, or no stockings, the only method was by means of a strap passing through the crotch of the wearer which was very unsatisfactory and annoying.

The mere fact that she had never, for lack of means, or for other reasons, made a commercial article of it would not prevent her from asserting her claims against an infringer if such infringement was proven and her patent was valid. Ideal Stopper Co. et al. v. Crown Cork & Seal Co., 4 Cir., 131 F. 244–246; Pickering v. McCullough, 104 U.S. 310–319, 26 L.Ed. 749.

The patent is not a design patent.

The issue therefore is, first, whether the patent is valid and, second, if valid whether it has been infringed. Plaintiff relies on the three claims of her patent which are as follows:

"1. A girdle of the step-in type formed of elastic webbing and having a strip of sheet rubber secured to the bottom and on the inside portion thereof to prevent the girdle from rolling or creeping upwards.

"2. A girdle formed of elastic webbing and strips of non-elastic material having a strip of rubber at the bottom thereof and on the inside of said girdle to frictionally hold the girdle against the body of the wearer in order to prevent the girdle from sliding or riding up.

"3. A girdle formed partly of elastic webbing and partly of non-elastic material having a narrow strip of sheet rubber at the bottom and inside the rear portion thereof to frictionally hold the girdle from working up from the bottom and cutting the flesh of the wearer at the waist line".

At the trial the inventor testified that she had worked as a stenographer and that this required her to sit down a great deal and that she had experienced a great deal of annoyance from the girdles she was able to obtain because of this creeping tendency. That other young ladies in the same building had frequently complained of the same trouble and that she hit upon the idea that a strip of "regular surgical rubber like they used in hospitals on beds" would overcome this objection. Consequently she took a plain sheet of this surgical rubber and stitched a piece loosely around the

bottom of the girdle and that kept the girdle down all right.

Thereafter she also used different kinds of sheet rubber depending on "what kind of rubber I happened to have on hand" and she testified that one of these is what she referred to in her patent when she stated that "this sheet rubber may be covered with some thin fabric if desired".

However, in each of her claims she relies on "having a strip of sheet rubber secured to the body" (Claim 1). "Having a strip of rubber at the bottom" (Claim 2). "Having a narrow strip of sheet rubber at the bottom" (Claim 3).

It also is shown by this record that Reidenbach distinguished her patent from the prior art, when called upon so to do by the Patent Office, by calling attention to this idea of hers of a "sheet rubber strip as opposed to a strip serviced with rubber strands or loops". I. T. S. Rubber Company v. Essex Rubber Company, 272 U.S. 429–443, 47 S.Ct. 136, 71 L.Ed. 335. Accordingly, certain of her original claims were cancelled before her patent was granted.

The plaintiff therefore cannot now enlarge her claims, but I do not, in view of my conclusions, deem this of very great importance for the reason that while the placing of a piece of sheet rubber at the bottom of the girdle possibly was new, it was not, in my opinion, an invention giving to the inventor a monopoly which she now seeks. The sheet or band of rubber functioned in exactly the same way as it was intended to function and by adding it to the well known commercial girdle it was aggregation rather than invention. Hailes v. Van Wormer, 87 U.S. 353–368, 20 Wall. 353–368, 22 L.Ed. 241.

The prior art shows that the use of rubber in this manner to prevent slipping was old. Patent to Chisholm April 17, 1928, No. 1,666,686. Patent to Winnett, March 26, 1929, No. 1,706,508. British patent Arnold, December 8, 1910, No. 11,-255.

Whether therefore there was a strip of rubber used or rubber in some other form used to produce this resistence to slipping and thereby functioned as intended seems to me to be relatively unimportant so far as invention is concerned.

Moreover, Camp applied for his patent November 28, 1927, and same was granted September 9, 1930, U. S. No. 1,775,509 whereby he produced a garment "provided with means for preventing relative sliding movement between the encircling garment and the body" accomplishing this prevention of slipping by the use of this well known function of rubber, in the form of rubber strands.

I agree with counsel for defendant when he states in his brief: "All that the inventor did was to substitute a sheet rubber slip-resisting strip for a slip-resisting strip surfaced with rubber loops or bands near the bottom of a girdle of well known construction, especially where sheet rubber strips had previously been used for slip resisting purposes in connection with other garments." Buffalo Gravel Corporation v. Gravel Products Corporation, 2 Cir., 76 F. 2d 756-759; Grinnell Washing Mach. Co. v. Johnson Co., 247 U.S. 426–433, 38 S. Ct. 547, 62 L.Ed. 1196.

The use of sheet rubber in such garments "plainly forshadowed" its use in the Reidenbach girdle. Altoona Publix Theatres, Inc., v. American Tri-Ergon Corporation, 294 U.S. 477-486, 55 S.Ct. 455, 79 L.Ed. 1005.

On the other hand counsel for plaintiff argues:

"The alleged novelty consists in a strip of rubber secured to the inside at the bottom to prevent the girdle riding up on the body of the wearer".

"The rubber at the bottom has a dual effect. It prevents riding up and also tends to hold the bottom of the girdle closely against the limbs of the wearer. This dual property is referred to in the patent but even if not disclosed it is inherent."

"The Chisholm patent does not suggest a girdle or a corset. The Winnett patent does not do so either. The Camp patent is confined to a corset in which there is very little creepage. The Arnold patent does not show a girdle."

"The patented article is useful and new. Girdles are old but the strip of rubber or 'band' has the double function of making the lower part of the garment less elastic than the upper part preventing upward movement. It was not obvious to take a two-way stretch garment and put rubber on the bottom. This double function is new and useful."

It seems to me, however, after careful consideration of these arguments, that merely placing a strip of rubber or rubber band at the bottom of the garment in order to tighten the garment against the

limbs of the wearer and to prevent creeping up of the garment is, in view of the prior art, and the well recognized function of rubber, not invention.

In my opinion, therefore, and for the reasons above given the patent is invalid.

However, as counsel for plaintiff argues that the courts of this circuit take a liberal view towards patents relating to articles of wearing apparel and resolves doubt in favor of patentability, citing such cases as, Governform Corporation v. Terry, 2 Cir., 4 F.2d 894, which was a patent for a belt; Greenwald Bros. v. La Vogue, etc., Co., 2 Cir., 226 F. 448, which was a patent for a skirt; Franc-Strohmenger & Cowan v. Arthur Siegman, Inc., 2 Cir., 27 F.2d 785, which was a patent for a necktie; David et al. v. Harris, 2 Cir., 206 F. 902, which was a patent for an improvement in sweaters; Kurtz et al. v. Belle Hat, etc., Co., 2 Cir., 280 F. 277, which was a patent for a hat lining; George Frost Co. et al. v. Cohn, 2 Cir., 119 F. 505, which was a patent for a hose supporter, I shall consider the remaining question of whether there was infringement.

The only claim that need be considered in this regard is Claim 1, which, for convenience, I repeat:

"1. A girdle of the step-in type formed of elastic webbing and having a strip of sheet rubber secured to the bottom and on the inside portion thereof to prevent the girdle from rolling or creeping upwards".

While I agree with counsel for defendants that plaintiff should be held to her "sheet of rubber", counsel for plaintiff argues that the word "sheet" has no particular meaning in the rubber art. That whether it be termed a sheet of rubber, a rubber band or any rubber that was secured on the inside of the girdle at the bottom to prevent riding up, the law as to a reasonable range of equivalents gives the right to plaintiff to enjoin the manufacture and sale of defendant's garment. "That the real invention in the patent lies in the fact that the rubber adheres to the body and prevents the girdle from riding up".

Even if this argument as to alleged equivalents is considered, nevertheless, in my opinion, the Camp patent above referred to precludes Reidenbach from claiming that her patent covers defendant's garment.

In my opinion, defendants' follows Camp's disclosure rather than Reidenbach and Camp's patent was plain anticipation both of plaintiff's and defendant's idea.

Defendant's girdle provides along the lower edge of the girdle a border having a non-slip inside surface, interwoven with the yarns is a third yarn known as "controlastic," consisting of a rubber tube having a core of cotton thread. These three yarns are knit together in such a way the rubber loops are on the inside of the border and function in the usual prevention of slipping matter exactly as Camp intended his use of rubber to do.

So that whether or not plaintiff is confined to "a strip of sheet rubber or is allowed to escape from this limitation and enlarge her claim to cover" a stripped surface with rubber loops or strands, there can be no infringement.

Plaintiff argues that the dual function of the rubber strip about the bottom of the garment is an essential characteristic of the patent and makes quite a little of the so-called two-way stretch.

Certainly the doctrine of equivalents cannot be applied to the extent of giving plaintiff a monopoly because an elastic garment tends to contract when slightly expanded.

I agree with counsel for plaintiff when he argues, as I have stated, that the real invention in the patent (if it was invention) relates to preventing the girdle from riding up.

To be sure defendants apparently had, and have, the usual idea that they had something new in their garment and have applied for a patent accompanied by the usual advertising campaign calling attention to their product with such words as "amazing", etc. But that does not prevent them from defending this suit. Paramount Publix Corporation v. American Tri-Ergon Corporation, 294 U.S. 464–476, 55 S.Ct. 449, 79 L.Ed. 997.

As was stated in the above case, "such inconsistency affords no basis for an estoppel, nor precludes the court from relieving the alleged infringer and the public from the asserted monopoly when there is no invention." [page 455.]

As I believe, therefore, that the patent of plaintiff is invalid and even if valid is not infringed, defendants are entitled to a decree dismissing the complaint with costs.

As both suits were tried together it does not seem to me that each defendant is entitled to a bill of costs in the same manner as if there had been independent

trials. This can be adjusted on the presentation of the decrees.

Submit findings of fact and conclusions of law.