### Application of PARKER.

(Court of Appeals of District of Columbia. Submitted March 12, 1923. Decided May 7, 1923.)

#### No. 1566.

1. **Patents ⬅113(6)—Amendment changing meaning of claim cannot be considered on appeal.**

On appeal from a decision of the Commissioner of Patents, the application cannot be considered as amended in accordance with the request to amend denied by the Commissioner, if the amendment would change the meaning of the claims, because that would require the Court of Appeals to consider a case different from that submitted to the Patent Office, which is not permissible.

2. **Patents ⬅113(6)—Practice of applying for leave to amend after adverse decision is not to be approved.**

Though an applicant for patent may define his own terms, provided he does it at the right time, he should present his claim while the application was pending before the Examiner, so that the appellate tribunals will have the benefit of the views of that expert, and the practice of waiting until he has been defeated before the Commissioner, and then moving for leave to amend, is not to be approved.

3. **Patents ⬅66—Claims for welding soft iron pole pieces on permanent magnets held not patentable.**

Claims in an application for patent for a magnetic field structure in which soft iron pole pieces are welded onto a permanent magnet do not disclose invention, in view of the prior art, showing similar pole pieces attached by other means to permanent magnets, and soft iron pole pieces welded to electro-magnets.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Patents ⚙⇒36—Solution of problem on which many have worked is strong proof of invention.**

Where a problem was to be solved, and many worked on it without avail before the successful one appeared, the one who solved the difficulty is in a strong position to claim recognition as an inventor.

Appeal from the Commissioner of Patents.

In the matter of the application of Frederick R. Parker for a patent. From a decision of the Commissioner, rejecting as unpatentable certain claims in the application, the applicant appeals. Affirmed.

Frederick R. Parker, of Chicago, Ill., for appellant.

Theodore A. Hostetler, of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, and ROBB, and VAN ORSDEL, Associate Justices.

SMYTH, Chief Justice. The Commissioner of Patents rejected as unpatentable claims 8 to 21, inclusive, embodied in an application of Parker for a patent on an assumed invention relating to a magnetic field structure, in which soft pole pieces are attached to permanent magnets by welding. Counts 8 and 10 are typical of all. They read:

8. A magnetic field structure constructed of a plurality of permanent magnets held apart from each other throughout their extent, and soft iron pole pieces for the respective magnets welded to the ends thereof and held in separated relation.

10. A permanent magnet having pole pieces of impermanent magnetizable material welded to the ends thereof.

[1, 2] After the Commisioner had decided the case against Parker, he moved for leave to amend the claims, so as to give a new definition to certain terms thereof. The motion was overruled, and he now asks us to consider the claims as amended in accordance with the motion. If the new definition changes the meaning of the claims, it should not be allowed, because, if it were, we would then have for consideration a different case from that submitted to the Patent Office, and this is not permissible on appeal. If, on the other hand, it does not change the meaning, Parker has suffered nothing by the denial of his motion. It is true, as said in Rajah Auto Supply Co. v. Belvidere Screw & Machine Co. (C. C. A.) 275 Fed. 761, that a patentee may define his own terms, provided he does it at the right time—not after the case has been disposed of by the Patent Office. We think with the Commissioner that, as a general rule, an applicant should present his claims while his application is pending before the Examiner, so that the appellate tribunals of the Patent Office may have the benefit of the views of the Examiner, who is an expert in the particular art involved. The practice of waiting until an applicant has been defeated before the Commissioner, and then moving for leave to amend the claims, is not to be approved.

Parker's application was in interference with Craft and Reynolds in August, 1917. The latter moved to dissolve the interference, on the ground that the subject-matter was unpatentable to Parker. The motion was sustained. This action was upheld by the Examiners in

⚙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Chief on appeal, and their decision was affirmed by the Commissioner. An appeal to this court from the Commissioner was dismissed, on the ground that his decision was not final, and therefore that we had no right to review it. Parker's application then went back to the Primary Examiner, who rejected the appealed claims. His action was affirmed by the Examiners in Chief, who on appeal were sustained by the Commissioner. It is true that both the Primary Examiner and the Examiners in Chief felt bound by the decision of the Commissioner in the interference proceeding. That decision, however, was in accord with their views, so far as the unpatentability of the claims was concerned. With the judgment of six tribunals against him, Parker's position is not an easy one to maintain.

[3] As we have just stated, the invention involved relates to the welding of soft iron pole pieces to permanent magnets. The purpose is to do away with the air spaces that exist where the connection is made by some other means. Welding is old in the arts. It was also known that, where welding was done, air spaces did not exist, and that the existence of air spaces caused loss in the electric current. The references upon which the rejection was predicated are a patent to Bunnell, April 13, 1880, to Stevens, April 4, 1903, and to Heinze, February 16, 1909, and Bulletin No. 1098 of the General Electric Company of Ft. Wayne.

In the Heinze patent is disclosed a plurality of U-shaped permanent steel magnets, having secured thereto on the inner side of their ends iron pole pieces. The specifications, however, do not state how those pieces are attached to the magnets. The Bunnell patent shows a permanent magnet of hardened steel, and pole pieces, preferably of soft iron, firmly secured to the respective poles of the permanent magnet, which virtually form continuations thereof. In this patent, as in the one to Heinze, the specifications do not state how the pole pieces are secured; but a man skilled in the iron-working art would, in our opinion, after having read what we have just said, attach the parts by welding. The Stevens patent connects the parts by screws, and in the General Electric Bulletin we find this:

"The reluctance of the magnetic circuit is made the lowest possible by cast welding the pole pieces to the field frame. By this construction the only air gap in the magnetic circuit is the one between the pole pieces and the armature."

From these disclosures we think it may be said that, beyond the welding of the one to the other, there is no novelty in the permanent magnetic structure or the pole pieces. Is that novelty a patentable one? Parker says that there is no instance where soft iron pole pieces were welded to permanent magnets, although pole pieces of soft iron have been welded to electro-magnets of soft iron. But air gaps are a disadvantage in the case of electro-magnets, as well as in that of permanent magnets, and if welding would remove them in the one instance, it should in the other. This seems reasonable. Applicant points to a distinction between a magnetic generator and a permanent magnetic structure, saying that, where the last-named structure stands idle for a time, the welding is of much advantage, whereas it is not,

289 F.—39

under like circumstances, with respect to the other kind of magnet. This may be conceded, but it does not establish that the fact that the pole pieces were welded to electro-magnets, thus producing as close a joint as possible, would not suggest to one skilled in the art that an identical result might be obtained by resorting to the same process in dealing with permanent magnets. On the contrary, we think it would have the effect of inspiring such a suggestion, and therefore that Parker's discovery is not a patentable one.

[4] The mere fact that he was the first to apply the welding process to permanent magnets does not prove the correctness of his position. In cases where a problem was to be solved, and many worked upon it without avail before the successful one appeared, the one who solved the difficulty is in a strong position to claim recognition as an inventor. In re Rowell, 48 App. D. C. 238. But the record does not show that Parker's case is one of those.

We have considered a letter from the Chief Engineer of the Ft. Wayne Electric Works, which we find in Parker's brief, but see nothing in it that conflicts with what we have just said.

For the reasons given, we think the Commissioner was right, and affirm his decision.

Affirmed.